UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

-v-

DAVID BREND,

Defendant.

Case No. 1:22-cr-00551 (JLR)

**OPINION AND ORDER**

JENNIFER L. ROCHON, United States District Judge:

On March 14, 2024, a jury convicted David Brend ("Brend") of one count of participating in a wire fraud conspiracy, in violation of 18 U.S.C. § 1349.  Brend has moved for a judgment of acquittal under Federal Rule of Criminal Procedure ("Rule") 29, or, alternatively, for a new trial under Rule 33.  Dkts. 253 ("Brend Br."), 267 ("Reply").  For the following reasons, the motions are DENIED.

## BACKGROUND

The grand jury charged Brend, along with five co-defendants, on October 13, 2022. Dkt. 2.  A jury trial against Brend began on March 4, 2024, Dkt.171, and the jury returned its verdict of guilty on March 14, 2024, Dkt.163; *see also* Dkts. 173, 175, 177, 179, 181, 183, 185, 187 ("Tr.").

The Court briefly summarizes the evidence presented at trial relevant to the instant motion, and otherwise presumes the parties' familiarity with the facts and background of this case.

## I.    IcomTech's Structure and Brend's Involvement

IcomTech claimed to be a company engaged in the business of trading and mining cryptocurrency, but instead operated a multi-level marketing ("MLM") Ponzi scheme. IcomTech operated by using promoters to give presentations to prospective investors, who

were presented with two avenues for profit: (1) the return on their initial investments in IcomTech; and (2) the opportunity to recruit additional investors and be paid for doing so. *See* Tr. 502:2-505:16.  The government presented extensive evidence that Brend worked as a promoter for the IcomTech scheme, recruiting victim-investors to give money to IcomTech, appearing in recruitment videos, and directing investors in his MLM "downline" to send cash payments directly to his company, True Credit Repair LLC.  *See id.* 502:2-505:16, 960:21-63:1, 1124:2-16.  Three victims who were recruited by Brend testified during the trial.  *See id.* 500:13-505:16 (Dr. Nektarios Demetriou); *id*. 751:7-753:19 (Marivic Francis); *id*. 1100:14-1106:2 (Kimberly Maes).  Brend appeared on promotional flyers as a Top Master or leader at IcomTech.  GX 1600-A; GX 1103-T; GX 224 at 407-08.  The government also introduced evidence that before Brend joined IcomTech, he sent a video about a similar MLM Ponzi scheme, Telexfree, to an associate.  *See* GX 298-F; GX 298 at 632.

The government also introduced detailed evidence of Brend's attempts to deter investors from discovering the fraud or going to the authorities.  When victims began having trouble making withdrawals from their IcomTech accounts, Brend assured them that the problem would be solved soon and passed along statements purporting to be from IcomTech leadership.  *See* GX 238 at 140-42, 180; Tr. 1113:6-1114:25. When victims raised concerns in group chats, Brend removed them.  *See, e.g.*, Tr. 1116:6-8 ("[Brend] doesn't like people to ask questions.  And if you ask questions for any updates about withdrawals, he will remove you from the chat group."), 1117:1-22, 1139:1-1142:14.  And after IcomTech's collapse, Brend actively deterred IcomTech victims from going to the authorities, instead directing them toward investments in new crypto-MLM Ponzi schemes and asking them to give him money to supposedly hire lawyers to get the money back from IcomTech, although no lawyers ever contacted the victims.  *Id.* at 1146:6-1150:16.

2

## II.    Procedural History

The case was submitted to the jury for deliberation on March 14, 2024.  Tr. 1596:1-2

The jury returned a verdict of guilty the same day.  Tr. 1615:22-1616:17.  Following the

verdict, trial counsel for Brend immediately sought an extension of time to file Rule 29 and 33

motions to April 18, 2024, which the Court granted.  *See* Tr. 1631:8-1632:25.  Brend moved

for a first extension of time to file Rule 29 and 33 motions on April 11, 2024.  Dkt. 203.

Gustavo Rodriguez ("Rodriguez"), Brend's co-defendant at trial, made a first motion for

extension of time to file Rule 29 and 33 motions on April 19, 2024.  Dkt. 205. The Court

granted both motions and extended the deadline for both defendants to May 2, 2024.  *See*

Dkts. 204, 206.  On May 1, 2024, Rodriguez made a second motion, joined by Brend, seeking

another extension of time to file post-verdict motions.  Dkt. 210.  The Court granted the

motion and further extended the deadline to file the Rule 29 and 33 motions to June 20, 2024.

Dkt. 211.  Following a change in counsel for Rodriguez, the Court again extended the

deadline for filing post-trial motions to July 25, 2024.  Dkts. 227, 229.  On July 25, 2024,

Brend submitted a motion for a judgment of acquittal under Rule 29, or, in the alternative, for

a new trial under Rule 33.  Dkt. 253.  On July 26, 2024, Rodriguez moved for the same.  Dkt.

254.  Rodriguez later withdrew his motion on October 7, 2024.  Dkts. 281, 282.  The Court

now considers Brend's motion only.

## LEGAL STANDARDS

## I.    Rule 29

"If the jury has returned a guilty verdict, the court may set aside the verdict and enter

an acquittal."  Fed. R. Crim. P. 29(c)(2).  "To grant a motion for acquittal under Rule 29, a

court must find that the evidence was legally insufficient to establish the defendant's guilt

beyond a reasonable doubt."  *United States v. Teman*, 465 F. Supp. 3d 277, 291 (S.D.N.Y.

2020), *aff'd*, No. 21-1920, 2023 WL 3882974 (2d Cir. June 8, 2023) (summary order).  This is a "heavy burden," and the Court "view[s] the evidence in the light most favorable to the government, drawing all inferences in the government's favor and deferring to the jury's assessments of the witnesses' credibility."  *United States v. Hawkins*, 547 F.3d 66, 70 (2d Cir. 2008) (citation omitted); *accord United States v. Jimenez*, 96 F.4th 317, 324 (2d Cir. 2024).  "The question is not whether this Court believes that the evidence at trial established guilt beyond a reasonable doubt, but rather, whether *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  *United States v. Mi Sun Cho*, 713 F.3d 716, 720 (2d Cir. 2013) (per curiam) (brackets, quotation marks, and citations omitted); *accord United States v. Swinton*, No. 23-6118, 2024 WL 1564487, at *3 (2d Cir. Apr. 11, 2024) (summary order).

## II.    Rule 33

### A.  In General

Under Rule 33, a district "court may vacate any judgment and grant a new trial if the interest of justice so requires."  Fed. R. Crim. P. 33(a).  A district court "has broad discretion to decide Rule 33 motions based upon its evaluation of the proof produced."  *United States v. McPartland*, 81 F.4th 101, 123 (2d Cir. 2023) (citation omitted).

"Although a trial court has broader discretion to grant a new trial pursuant to Rule 33 than to grant a motion for a judgment of acquittal . . . that discretion should be exercised sparingly and only in the most extraordinary circumstances."  *United States v. Landesman*, 17 F.4th 298, 330 (2d Cir. 2021) (internal quotation marks omitted); *see also United States v. Stewart*, 433 F.3d 273, 296 (2d Cir. 2006) ("[A Rule 33 motion] should be granted only with great caution and in the most extraordinary circumstances."  (citation omitted)).  "The ultimate test on a Rule 33 motion is whether letting a guilty verdict stand would be a manifest

injustice." *McPartland*, 81 F.4th at 123 (quoting *United States v. Ferguson*, 246 F.3d 129, 134 (2d Cir. 2001)).  To grant a new trial, a district court must have "real concern that an innocent person may have been convicted."  *Id.* (citation omitted).

### B.  Ineffective Assistance of Counsel Claims

"It is well settled that an ineffective assistance of trial counsel claim can be asserted in a Rule 33 motion, and considered by the district court, in its discretion, before sentencing." *United States v. Belfiore*, 473 F. Supp. 3d 72, 89 (E.D.N.Y. 2020), *aff'd*, No. 22-20, 2024 WL 2075128 (2d Cir. May 9, 2024) (summary order).  "Although not always required, a hearing on a Rule 33 motion is sometimes necessary to provide a sufficient record for a court to review the ineffective assistance claim on the merits."  *United States v. Scali*, No. 16-cr-00466 (NSR), 2018 WL 3536082, at *4 (S.D.N.Y. July 23, 2018) (internal quotation marks and punctuation omitted).  "A district court may also decide a claim of ineffective assistance of counsel where the record provides a sufficient basis upon which to deny the petition."  *Id*. (internal quotation marks and punctuation omitted); *see also Chang v. United States*, 250 F.3d 79, 86 (2d Cir. 2001) (approving district court's decision to decide ineffective assistance claim without a full evidentiary hearing where "the testimony of Chang and his trial counsel would add little or nothing to the written submissions").

"To prevail on a claim for ineffective assistance of counsel," a defendant "must satisfy *Strickland*'s two-part test, which requires demonstrating (1) that counsel's performance was deficient, *i.e.*, 'that counsel's representation fell below an objective standard of reasonableness,' and (2) that counsel's deficient performance prejudiced the defense, meaning that 'counsel's errors were so serious as to deprive the defendant of a fair trial.'"  *United States v. Choudhry*, 330 F. Supp. 3d 815, 844 (E.D.N.Y. 2018) (quoting *Strickland v.*

*Washington*, 466 U.S. 668, 687-88 (1984)), *aff'd*, 813 F. App'x 4 (2d Cir. 2020) (summary order).

In the first prong of the *Strickland* analysis, the Court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance, . . . viewing the actions in light of the law and circumstances confronting counsel at the time." *Harrington v. United States*, 689 F.3d 124, 129 (2d Cir. 2012). "When considering the first prong, [courts] strongly presume that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment, . . . a presumption that is overcome only through a showing that counsel failed to act reasonably considering all of the circumstances." *Jackson v. Conway*, 763 F.3d 115, 152 (2d Cir. 2014). "Courts applying *Strickland* are especially deferential to defense attorneys' decisions concerning which witnesses to put before the jury." *Greiner v. Wells*, 417 F.3d 305, 323 (2d Cir. 2005); *see also United States v Derounian*, No. 16-cr-00412 (JMA), 2024 WL 3623522, at *22 n.23 (E.D.N.Y. Aug. 1, 2024) (emphasizing that "a court reviewing a claim for ineffective assistance of counsel is not permitted to 'use hindsight to second guess [counsel's] strategy choices'" (quoting *Baran v. United States*, 160 F. Supp. 3d 591, 596 (S.D.N.Y. 2016))).

In the second prong of the *Strickland* analysis, "the defendant 'must demonstrate a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" *United States v. Robinson*, No. 16-cr-00545 (SJF), 2021 WL 62076, at *23 (S.D.N.Y. Jan. 6, 2021) (quoting *Harrington v. Richter*, 562 U.S. 86, 104 (2011)). "A claim for ineffective assistance of counsel 'must be rejected if the defendant

fails to meet either the performance prong or the prejudice prong.'"  *Choudry*, 330 F. Supp. 3d at 845 (quoting *Bennett v. United States*, 663 F.3d 71, 85 (2d Cir. 2011)).

## DISCUSSION

Brend does not contest that IcomTech was a fraud.  Brend instead asks the Court to vacate his guilty verdict under Rule 29 because the government introduced only circumstantial evidence of his knowledge and participation in the conspiracy to commit wire fraud and has therefore failed to prove beyond a reasonable doubt that Brend knowingly and intentionally participated in the conspiracy or acted with the requisite intent to further the goals of that conspiracy.  Brend Br. at 14-16.  In the alternative, Brend asks the Court to vacate his guilty verdict and grant a new trial under Rule 33 due to the purported insufficiency of the evidence and ineffective assistance of his trial counsel.  Brend Br. at 17, 22.  The Court disagrees and denies both motions.

## I.    Motion for Acquittal

Brend argues that the Court should enter a judgment of acquittal because "[t]he evidence in this trial does not support a finding of guilty knowledge or criminal intent, as there is no indication that Mr. Brend knew that IcomTech was not engaged in crypto trading" and because the government did not introduce evidence that "established beyond a reasonable doubt that Mr. Brend had a mutual understanding with any of the individuals involved in the conspiracy, beyond ambiguous, circumstantial evidence upon which an inference could have been drawn either way."  Brend Br. at 10-11.

Specifically, Brend argues that co-defendant Moses Valdez ("Valdez") testified that he initially believed that "Icomtech was not a fraud . . . for some time" which shows that Brend, who purportedly "received assurances that trading was occurring," also did not have "the requisite state of mind of intent to commit fraud," Brend Br. at 2; that the testimony of other

witnesses was "consistent with David Brend's innocence," *id.* at 3; *see also id.* at 4; and that "Brend was simply another IcomTech investor who got duped," *id.* at 7.  Further, Brend claims that the evidence the government introduced of Brend's use of his shell company, True Credit Repair LLC, did not prove that "the purpose of using the family business account was to procure, convert or to enrich himself with investor monies," *id.* at 14, and that Brend himself lost "all of his own money" invested in IcomTech, just as the victim-investors did, *id.* at 14-15.  Brend also argues that the government's evidence did not "show Mr. Brend's knowledge of the falsity of the operation, nor that [he] ever had a *mutual* understanding of the conspiracy." *Id.* at 15.  Because, Brend argues, one might "just as easily" infer his innocence, rather than his guilt, from the government's evidence, the evidence "failed to prove beyond a reasonable doubt that Mr. Brend knowingly and intentionally participated in the alleged conspiracy or acted with the requisite intent to further the goals of the alleged conspiracy" and thus the jury "had to speculate" as to Brend's knowledge and intent.  *Id.* at 16.

Brend's contentions as to the insufficiency of the evidence all boil down to his contention that inferences could have been drawn in favor of his ignorance and thus innocence of the scheme, rather than in favor of finding him guilty of knowingly joining the conspiracy. This reasoning ignores the Court's obligations under Rule 29 to consider "the evidence presented at trial in the light most favorable to the government, crediting every inference that the jury might have drawn in favor of the government."  *United States v. Odiase*, 312 F. Supp. 3d 432, 434 (S.D.N.Y. 2018) (internal quotation marks omitted); *see also United States v. Moses*, 109 F.4th 107, 116 (2d Cir. 2024).  Even crediting Brend's contentions that the evidence supported drawing inferences "either way," Brend Br. at 11, the Court would not have grounds to grant Brend's Rule 29 motion; in cases where the inferences could be drawn

either way, "the court must let the jury decide the matter," *United States v. Cuti*, 720 F.3d 453, 461 (2d Cir. 2013) (quoting *United States v. Temple*, 447 F.3d 130, 137 (2d Cir. 2006)).

The government presented sufficient evidence from which a reasonable finder of fact could have concluded that all elements of the charged offense were proven beyond a reasonable doubt.  The Court takes each element in turn.

First, the government provided sufficient evidence of the existence of the charged conspiracy, specifically that from at least or in or about May 2018 up to and including in or about December 2019, or any portion of that time period, there was an agreement or understanding among two or more persons to commit wire fraud.  Brend does not dispute the existence of an agreement between his co-defendants to defraud victims of money by soliciting their investment in IcomTech, using the wires to do so.  *See* Dkt. 266 ("Gov't Br.") at 13; Brend Br. at 1 n.2; Reply at 5.

Second, the government provided sufficient evidence that Brend knowingly and willfully joined the charged conspiracy.  The government presented evidence that Brend knew about similarly structured Ponzi schemes and their fraudulent nature: in August 2018, before he joined IcomTech, Brend sent associate Norberto Rey a video clip regarding the MLM Ponzi scheme known as Telexfree, which contained footage of Telexfree rallies similar to IcomTech's promotional rallies, discussed the profits made by recruiters participating in the fraudulent scheme, and depicted the binary payment system at use in both Telexfree and Icomtech.  GX 298-F; GX 298 at 632.  After IcomTech collapsed, Brend also encouraged IcomTech victims to invest in other similar cryptocurrency MLM schemes like Kuvera, InstaTradex, and Sky Blue to make back the money lost in IcomTech.  *See, e.g.*, Tr. 512:1-13, 518:5-519:9, 520:2-24.  Brend was also a Top Master, as shown in the flyers, and participated in IcomTech promotional events. GX 1600-A; GX 1103-T; GX 224 at 407-08.  He had access

9

to and met with IcomTech leaders like David Carmona and Aline Hernandez ("Hernandez"), *see* GX 238 at 202, 243, 302. Viewing this evidence in the light most favorable to the government, a reasonable juror could have inferred that Brend, familiar with the structure of MLM Ponzi schemes like IcomTech and having interacted directly with organizers of the fraud, knowingly and willfully joined the conspiracy.

The government also produced evidence demonstrating that Brend knowingly deceived his victims as a part of his participation in the IcomTech fraud. In his communications with his victims, he emphasized IcomTech's nonexistent cryptocurrency trading and mining operations and his relationship with IcomTech's leadership to establish his credibility and the credibility of the operation, *see, e.g.*, GX 224 at 125; GX 230 at 198, 220; GX 238 at 153. Brend also participated in IcomTech's hierarchical payment system, directing victims to pay him in cash using his shell company, True Credit Repair LLC, *see* GX 224 at 63, as well as to send cash to co-conspirators like Hernandez, who used the shell corporation Idea Management LLC, *see* GX 292 at 1-2; GX 224 at 179-81; GX 230 at 74. He gave his victims instructions to write false statements on check memo lines made out to True Credit Repair LLC, such as "for credit repair", when the payments were actually for investment in IcomTech. *See, e.g.*, Tr. 1124:2-1126:13. He structured deposits and withdrawals into his shell company so that the maximum did not exceed $10,000 and instructed his recruits (his "downline") to do the same. GX 224 at 48. The government also introduced evidence of numerous lulling statements that Brend made to his victims to encourage them to continue investing in IcomTech, even when they could no longer withdraw money. *See, e.g.*, GX 238 at 141-42, 180. When IcomTech investors discussed problems with payouts or suggested IcomTech was fraudulent in investor group chats, Brend removed people from chat groups to quell dissent. *See, e.g.*, Tr. 1139:3-4 ("If you ask questions on the WhatsApp, David Brend

will remove you."); *id.* at 1141:6-1142:14. The government further demonstrated that when IcomTech collapsed, Brend discouraged investors from going to law enforcement or lawyers and instead solicited contributions from them to pay for lawyers to "pursue legal action" against IcomTech, though no lawyers ever contacted Brend's victims about a lawsuit against IcomTech. *See id.* at 1146:6-1150:16 GX 1641.

Brend argues that despite the weight of this evidence, the evidence of his participation was insufficient because none of the evidence was direct evidence. But the government is entitled to prove its case "solely through circumstantial evidence," *United States v. Lorenzo*, 534 F.3d 153, 159 (2d Cir. 2008), both as to "a [conspiracy] defendant's knowledge of the conspiracy and his participation in it with criminal intent," *United States v. Atilla*, 966 F.3d 118, 128 (2d Cir. 2020) (quoting *United States v. Gordon*, 987 F.2d 902, 906-07 (2d Cir. 1993)), and there is sufficient evidence for a reasonable jury to find that the government has done so here. Brend's arguments to the contrary rely instead on a faulty view of the law that asks this Court to draw inferences in his favor. Instead, viewing the evidence in the light most favorable to the government, as we must, this Court concludes that a rational trier of fact could have found all the elements of the crime beyond a reasonable doubt based on the evidence presented at trial. Brend's Rule 29 motion is therefore denied.

## II.    Motion for a New Trial

Brend next argues that the Court should grant him a new trial under Rule 33 for two reasons: first, because "there was insufficient testimony and physical evidence presented at trial to prove that Mr. Brend was guilty of conspiracy to commit wire fraud" and his conviction was "based on some circumstantial evidence . . . not sufficient to establish Mr. Brend's guilt," Brend Br. at 18; and, second, because he claims his trial counsel "provided constitutionally defective assistance," *id.* at 22.

**A. Insufficiency of the Evidence**

For the reasons discussed above, a new trial is not warranted based on the sufficiency of the evidence. Though the Court has broader discretion to grant a Rule 33 motion than to grant a motion for a judgment of acquittal under Rule 29, *see Landesman*, 17 F.4th at 330, "[t]he 'ultimate test' for the Court's consideration is 'whether letting a guilty verdict stand would be a manifest injustice [such that] . . . an innocent person may have been convicted.'" *United States v. King*, No. 21-cr-00255 (NSR), 2023 WL 6311450, at *6 (S.D.N.Y. Sept. 28, 2023) (quoting *Ferguson*, 246 F.3d at 133). Insofar as Brend criticizes the circumstantial nature of the government's evidence at trial, the Court is not convinced that "letting [the] guilty verdict stand would be a manifest injustice," *McPartland*, 81 F.4th at 101 (quoting *Ferguson*, 246 F.3d at 134), nor does the Court have any "concern that an innocent person may have been convicted," *id.* (quoting *United States v. Sanchez*, 969 F.2d 1409, 1414 (2d Cir. 1992)). As discussed above, the government introduced extensive evidence demonstrating Brend's knowing participation in the conspiracy, and Brend's attempts to minimize the evidence, *see* Brend Br. at 18, are unpersuasive.

In addition to the arguments Brend made in supporting his Rule 29 motion, he also offers his declaration, *see* Dkt. 253-1 ("Brend Decl."), in which he states that there was evidence of his "legitimate" sources of income that his trial counsel did not introduce, Brend Br. at 19. Brend has not met the standard for a new trial pursuant to Rule 33 based on newly discovered evidence. "Relief under Rule 33 based on newly discovered evidence may be granted only upon a showing that '(1) the evidence [was] newly discovered after trial; (2) facts are alleged from which the court can infer due diligence on the part of the movant to obtain the evidence; (3) the evidence is material; (4) the evidence is not merely cumulative or impeaching; and (5) the evidence would likely result in an acquittal.'" *United States v.*

*Forbes*, 790 F.3d 403, 406-07 (2d Cir. 2015) (quoting *United States v. Owen*, 500 F.3d 83, 88 (2d Cir. 2007)).  Even assuming that the contents of Brend's declaration are true, Brend has made no showing that this evidence is "newly discovered."  Rather, all the sources of information identified in the declaration were known to Defendant before or during trial, and are therefore not newly discovered evidence within the meaning of Rule 33.  *See id.* at 408-09 (explaining that evidence is not "newly discovered" when it was known of before trial).  As a result, the Court denies Brend's Rule 33 motion on this ground as well.

### B.  Ineffective Assistance of Counsel

The final ground for Brend's Rule 33 motion is that his counsel was ineffective.  The Court has discretion as to whether to hold a hearing on a motion for a new trial under Rule 33 and such a hearing may be necessary on a claim of ineffective assistance of counsel if the record presents — but does not permit the court to resolve — "questions of fact or mixed fact and law."  *United States v. Walia,* No. 14-cr-00213 (MKB), 2015 WL 3466290, at *4 (E.D.N.Y. 2015) (citation and brackets omitted).  Here, the Court exercises its discretion to resolve Brend's Rule 33 motion without an evidentiary hearing, as his submissions do not create questions either of fact or mixed law and fact requiring the Court to expand the record. The Court will therefore address each of Brend's bases for an ineffective counsel claim on the current record before the Court.

### 1.  Failure to Call Witnesses

Brend first claims that his trial counsel's failure to call "any witnesses" to establish Brend's belief that "IcomTech's activity was legitimate" was ineffective assistance, particularly since Brend provided his trial counsel with a list of "potential trial witnesses." Brend Br. at 26-27; *see* Brend Decl. ¶ 14.  Brend has submitted the affidavits of three potential witnesses — IcomTech investor-victims, one of whom was Brend's son — who

confirm they would have testified on Brend's behalf if called.  Each swore that their "testimony would have been extremely relevant to the innocence" of Brend, without providing any details as to what their testimony would have been.  *See* Dkts. 253-2 ¶ 8 ("Webb Decl."); 253-3 ¶ 8 ("Hicks Decl."); 253-4 ¶ 7 ("Samson Brend Decl.").

In general, "[t]he decision not to call a particular witness is typically a question of trial strategy that [reviewing] courts are ill-suited to second-guess . . . [C]ounsel's decision as to whether to call specific witnesses — even ones that might offer exculpatory evidence — is ordinarily not viewed as a lapse in professional representation." *Greiner v. Wells*, 417 F.3d 305, 323 (2d Cir. 2005) (internal quotation marks omitted) (quoting *United States v. Luciano*, 158 F.3d 655, 660 (2d Cir. 1998) (per curiam); *United States v. Best*, 219 F.3d 192, 201 (2d Cir. 2000)); *see also United States v. Blanco*, 811 F. App'x 696, 702 (2d Cir. 2020) (summary order); *Ventura v. United States*, No. 18-cv-09179 (JGK), 2024 WL 1929183, at *17 (S.D.N.Y. May 1, 2024).  This general rule "is especially true 'where the [defendant] has failed to identify any specific evidence or testimony that would have helped his case if presented at trial.'"  *United Sates v. Noorzai*, 953 F. Supp. 2d 499, 508 (S.D.N.Y. 2013) (quoting *Jones v. Hollins*, 884 F. Supp. 758, 766 (W.D.N.Y.), *aff'd*, 89 F.3d 826 (2d Cir. 1995)).  Since neither Brend's motion nor the declarations attached to it "identify *any specific evidence or testimony* that would have helped his case if presented at trial," *id.*, his conclusory claims are insufficient to meet his burden on the first prong of *Strickland*.  *See Lopez v. United States*, 792 F. App'x 32, 38 (2d Cir. 2019) (summary order) (explaining that "without more than conclusory statements as to the would-be witness's testimony, Lopez cannot present a plausible claim of ineffective assistance based on [counsel's] failure to call the witness to testify" and the district court need not hold a formal hearing to decide the motion); *United States v. Vargas*, 920 F.2d 167, 170 (2d Cir. 1990) (rejecting ineffective assistance of

counsel claim for failure to call witness where the only information presented regarding the witness's anticipated testimony was witness's affidavit containing "conclusory" statements that the defendant had no knowledge of the drug-related activities); *Margiellos v. United States*, No. 17-cv-00441 (JFB), 2018 WL 5801540, at *8 n.5 (E.D.N.Y. Nov. 6, 2018) (finding that conclusory affidavit did not advance ineffective assistance of counsel claims).

Without identifying what the additional evidence would be from the proposed witnesses, Brend cannot establish, nor even raise a question, that the testimony "would have produced a different result." *Patel v. United States*, 19 F.3d 1231, 1237 (7th Cir. 1994). The central question for the jury here was whether Brend knowingly joined the conspiracy. The proposed declarant investors in Icomtech could not have testified to representations that Brend made to them regarding his innocence or lack of knowledge of the fraud for the truth of the matters asserted given hearsay constraints. On the information (or lack thereof) presented by Brend here, the Court cannot assess the declarants' potential testimony and therefore cannot conclude that there would have been a reasonable probability that the result of the trial would be different if they were called to testify. *See Strickland*, 466 U.S. at 694; *see also Lasher v. United States*, No. 17-cv-05925 (NRB), 2018 WL 3979596, at *7 (S.D.N.Y. Aug. 20, 2018) (defendant's assertions that witnesses were "able to testify in her defense, but did not" was insufficiently specific about "the content of their testimony and how their testimony would have affected the outcome"). This is especially so in light of the extensive evidence presented at trial from which a jury could find that Brend knowingly joined the conspiracy, including representations that Brend made to victim-investors about IcomTech, his instructions to victims to send investments in Icomtech in cash to a credit repair company, and his efforts to prevent victims from contacting law enforcement, *see supra* at 9-11; *Patel*, 19 F.3d at 1237

(finding that defense counsel's failure to call a witness did not prejudice defendant given the "overwhelming evidence against him").

Therefore, the failure to call the witnesses identified by Brend is not a basis on which to find ineffective assistance of counsel for purposes of this Rule 33 motion.

### 2. Failure to Introduce "Exculpatory" Documentary Evidence

Brend next claims that his trial counsel was ineffective by failing to introduce "exculpatory documentary evidence," Brend Br. at 29, particularly screenshots from his Bitcoin wallet that show that he transmitted victims' investments to IcomTech instead of retaining them, *see id.*, as well as evidence of his bankruptcy and evidence supporting his (or his son's) financial losses, *see* Brend Decl. ¶¶ 22, 24-25.

This claim fails under both prongs of *Strickland*. First, Brend has not demonstrated that his trial counsel's decision not to introduce screenshots of Brend's bitcoin wallet fell outside the "wide range of reasonable professional assistance," *Strickland*, 466 U.S. at 689, particularly since trial counsel did introduce into evidence some of Brend's email receipts from IcomTech, *see* DX 100-55. Trial counsel's decision to rely on one source of evidence over another was reasonable given that trial counsel could have concluded that introducing both forms of evidence would have been cumulative.

In any event, Brend cannot demonstrate the second prong of the *Strickland* test by showing a reasonable probability that this evidence would have changed the outcome of the proceedings. *See Noorzai*, 953 F. Supp. 2d at 507-08. As the government explains, the Bitcoin receipts and transfers "fit squarely within the IcomTech scheme," Gov't Br. at 37, since the government's evidence at trial demonstrated that IcomTech's MLM Ponzi scheme operated by rewarding promoters like Brend, who delivered money from their downline up the chain to IcomTech leadership, with "points" that the promoters then sold for profit, *see,*

*e.g.*, Tr. 924:8-25, 847:19-848:8.  Brend's claim that the Bitcoin wallet receipts demonstrate that he "did not keep anyone's money," Brend Decl. ¶ 28, would also have been contradicted by significant other evidence in the trial record that Brend deposited at least some of the money he received into the True Credit Repair LLC bank accounts, which he then used to pay his wife a salary, pay for expenses such as trips to Sea World, and transfer money to an LLC controlled by a co-conspirator.  *See* Tr. 561:20-565:6; GX 336-A at 132-33; GX 1001 at 1 (highlighting that the True Credit Repair accounts took in approximately $25,000 more in credits than they had in debits from May 2018 through December 2019); *id.* at 3 (salary to Laryssa Brend).  He also touted to others that he withdrew money invested in IcomTech. GX 238 at 111 (Brend commenting "Not a bad weekly pay check!" in connection with incoming bitcoin transactions); *id.* at 120 (Brend commenting "We just got paid" on purported payments from IcomTech to bitcoin addresses).

With respect to his purported losses, it is further implausible that his supposed $60,000 loss in 2019 from IcomTech would have driven him to bankruptcy three years later, *see* Brend Decl. ¶ 24, in light of other information about his finances including his expensive tangible assets and his other supposed sources of income.  As a result, even if Brend had been able to introduce the evidence to which he now directs the Court, there is not a reasonable possibility that it would have changed the outcome of the trial, especially given the other detailed evidence of Brend's knowledge of and participation in the fraudulent IcomTech scheme.

### 3. Failure to Call Brend to Testify

Brend also claims that his trial counsel was ineffective due to his failure to call Brend as a witness in his own defense.  *See* Brend Br. at 24, 30-31.  The Court can also resolve this claim on the record presented, since neither Brend's affidavit nor the Court's allocution of Brend and his trial counsel indicate that trial counsel failed to satisfy his duty under *Brown* to

"inform the defendant of the nature and existence of his right to testify," *Noorzai*, 953 F.

Supp. 2d at 507, and, as such, Brend has not met his burden under *Strickland*.

To satisfy his obligation to provide effective assistance, trial counsel was obligated to

"inform the defendant of the nature and existence of his right to testify." *Id.* Brend does not

claim that his counsel either failed to inform him of his right to testify or "overr[ode] his

desire to testify." *Brown v. Artuz*, 124 F.3d 73, 79 (2d Cir. 1997). Instead, Brend argues that

his trial counsel ought to have "insist[ed] on Mr. Brend's testimony," since his testimony was

"necessary" due to "the fact that his trial counsel essentially introduced no evidence in his

defense." Brend Br. at 30.

At trial, the Court extensively allocuted Brend and his counsel on whether his attorney

had informed him of the nature of his right to testify and whether he had discussed the

decision with his attorney. *See* Tr. 1353:4-1354:25. Brend stated that he understood he had

the right to testify in his defense, he discussed it with his counsel, he understood the decision

was his and his alone to make, and that he had decided not to testify. *Id.* Brend's assertion

that his trial counsel's purported failure to "encourage him to testify," Brend Br. at 30, does

not contravene his counsel's obligation to provide effective assistance given that his counsel

(and the Court) informed him of his right to testify, *see, e.g.*, *Delarosa v. United States*,

No. 98-cr-00957 (JSM), 2001 WL 1191016, at *1 (S.D.N.Y. Oct. 9, 2001) (finding that

advising client not to testify is "advice that any competent criminal lawyer would have given"

and since defendant was aware of his right to testify, this advice was "well within the range of

tactical strategy that is left to the professional judgment of defense counsel" for purposes of

assessing ineffective assistance of counsel claim); *Williams v. United States*, 707 F. Supp. 3d

251, 261 (W.D.N.Y. 2023) (denying ineffective assistance of counsel claim because even if

attorney provided bad advice about the advantages and disadvantages of testifying, defendant "ultimately elected not to testify").

Therefore, Brend's argument fails at the first step of the *Strickland* analysis.

### 4.  Stipulations

Brend also briefly objects to his trial counsel's stipulation to the admission of two spreadsheets: one from the Gmail account of Hernandez, a co-conspirator, detailing investor accounts and balances, and a spreadsheet from Brend's email account containing a list of his investors and their balances.  *See* Brend Br. at 30-31; Tr. 951:7-960:16; *id.* at 1063:13-24; GX 1303-A-T; GX 1800-Q-A.

"As a rule, counsel's decision to stipulate to certain evidence, like his decisions to offer or object to evidence, involves a strategic choice, which is 'virtually unchallengeable' if made after thorough investigation."  *United States v. Gaskin*, 364 F.3d 438, 468 (2d Cir. 2004) (citing *Strickland*, 466 U.S. at 690-91).  Brend "does not contend that counsel's decision to stipulate was not adequately investigated," *id.*, but instead objects to the fact that he himself "does not know the sources of the data therein and does not understand the manner in which the data was organized," and that these spreadsheets are now being used in his sentencing, Brend Br. at 30-31.  These contentions do not demonstrate that counsel's stipulation decision was objectively unreasonable at the time that it was made: "[e]xperienced defense attorneys routinely stipulate to undisputed facts in order to maintain credibility with the jury when challenging other aspects of the prosecution case."  *Gaskin*, 364 F.3d at 469.  The spreadsheets are relevant and contain numerous indicia of reliability.  The spreadsheet maintained by Hernandez, a co-conspirator, contained names of known victims, and reflected the MLM language such as "Left" and "Right" in reference to the so-called "binary," as another co-conspirator, Juan Arellano ("Arellano"), testified.  Tr. 955:3-57:19; *see* GX 1303-

19

A-T.  Brend has not suggested how his case would have been improved if custodial witnesses were called to testify as to the source of the spreadsheets, one of which came from Brend's own email account and included names of individuals in his downline (some of whom testified at trial).  Finally, Brend's counsel did in fact object to some testimony about GX 1303-A-T, which was sustained by the Court.  Tr. 953:1-10, 957:18-22.  Brend's lamentations that the spreadsheets are being used as a basis for sentencing enhancements does not speak to the effectiveness of trial counsel in permitting the exhibits to be admitted.  Finally, even if the exhibits had been excluded, there remained significant evidence for a jury to find that the government met its burden in proving Brend guilty.

As a result, Brend's Rule 33 claim on this ground is rejected.[1]

### 5.  Failure to Object to Conscious Avoidance Instructions

Next, Brend argues that his counsel's failure to object to the conscious avoidance instruction given by the Court constituted ineffective assistance.  *See* Brend Br. at 31. Brend's objection to the instruction is twofold: he alleges that the instruction itself was erroneously given, since the evidence did not support the instruction, and that the language of the instruction itself is improper.  *See* Brend Br. at 33-36.

As to Brend's first complaint, Brend's counsel was not ineffective in failing to object to this charge because the government introduced sufficient evidence to support the conscious avoidance instruction.  "Red flags about the legitimacy of a transaction can be used to show both actual knowledge and conscious avoidance."  *United States v. Muratov*, 849 F. App'x

---

[1] Insofar as Brend is taking issue with the admission of evidence of other uncharged Ponzi schemes under Rule 404(b), Brend Br. at 20, such evidence was relevant to knowledge, intent, and lack of mistake, Dkt. 153 (Final Pre-Trial Conference ("FPTC") Tr.) 76:8-86:16.  In any event, his arguments do not substantiate an ineffective assistance of counsel claim since Brend's counsel did in fact object to the introduction of the evidence.  Dkt. 129 at 1-4.

301, 305 (2d Cir. 2021) (summary order) (quoting *Ferguson*, 676 F.3d at 278 (2d Cir. 2011)).

Brend received numerous reports over the course of 2019 from victims in his downline about

problems they experienced cashing out from the IcomTech website, warned them against

complaining, and assured victims that the problems would be fixed. *See* Tr. 1140:3-1142:14

(Brend warning victims for "negative talk" in the group chat when they had difficulty making

withdrawals); GX 238 at 8-12. Brend had opportunities to discover that IcomTech was not a

legitimate business: he met with IcomTech's leaders, highlighted his relationship in

communications to victims, and was in frequent contact with IcomTech leadership like

Hernandez. *See* GX 238 at 202, 243, 302. Other promoters like Valdez and Arellano, who

were similarly situated to Brend, quickly understood that IcomTech was a scam because of

their ability to interact directly with IcomTech leaders who were unable to answer simple

questions about the transactions or cryptocurrency mining. Tr. 270:2-271:11, 833:10-837:1.

In addition, Brend watched a video detailing a strikingly similar MLM Ponzi scheme before

ever joining IcomTech — and shared the video with a co-conspirator, Norberto Rey —

indicating Brend's awareness of the features of such fraudulent schemes. *See* GX 298 at 632.

Even if the Court credits Brend's suggestion that he entered into the scheme unaware that he

was participating in the conspiracy, at some point, the large number of complaints from

victims and repeated flimsy excuses from IcomTech, along with his knowledge of other MLM

frauds, would have certainly raised a red flag that he was participating in a fraudulent scheme.

The Court cannot say that failing to object to a jury instruction supported by the appropriate

factual predicate was outside the "wide range of reasonable professional assistance."

*Strickland*, 466 U.S. at 669.

　　　　Further, Brend cannot demonstrate prejudice from his trial counsel's failure to object,

since the Court also instructed the jury on actual knowledge and there was overwhelming

evidence of actual knowledge=. *See supra* at 10-11). *See United States v. Perez*, 523 F. App'x 842, 843 (2d Cir. 2013) (summary order) ("As for the 'conscious avoidance' instruction, Perez suffered no prejudice because the government proved actual knowledge with overwhelming evidence."); *United States v. Ferrarini*, 219 F. 3d 145, 157 (2d Cir. 2000) (including conscious avoidance charge was harmless error where there was overwhelming evidence of actual knowledge). As a result, Brend has not shown a reasonable probability that the outcome of the trial would have been different if his trial counsel had objected to the conscious avoidance instruction, and so has not satisfied *Strickland*'s second prong.

Brend next complains that the instruction was improperly worded "by instructing [the jury] that it could find knowing participation in the alleged conspiracy based on a finding of conscious avoidance." Brend Br. at 35. The conscious avoidance charge was expressly discussed during the charging conference, based on questions raised by counsel for Brend's co-defendant, and the Court and the parties engaged in dialogue as to how to properly include the instruction in the context of the overall charge. Tr. 1293:15-1299:5. When read as a whole, *Cupp v. Naughten,* 414 U.S. 141, 146-47 (1973) (specific jury instruction "must be viewed in the context of the overall charge"), the conscious avoidance charge was not inaccurate or misleading. Indeed, the Second Circuit has approved a near-identical instruction on conscious avoidance in *United States v. Lewis*, 545 F. App'x 9, 11 (2d Cir. 2013) (summary order). Since no error existed in the instruction, Brend's counsel's performance does not fall below an objective standard of reasonableness. *See Aparicio v. Artuz*, 269 F.3d 78, 99 (2d Cir. 2001) ("[W]hen a trial court's instruction is legally correct as given, the failure to request an additional instruction does not constitute deficient performance."). Measured against these standards, trial counsel's decision not to object to the legally correct conscious

avoidance claim was not objectively unreasonable, did not amount to ineffective assistance, and thus is not a ground to grant Brend's Rule 33 motion.[2]

## CONCLUSION

For all of these reasons, Brend's motions under Rule 29 for a judgment of acquittal, or, alternatively, for a new trial under Rule 33, are DENIED.  The Clerk of Court is respectfully directed to close the motion pending at Dkt. 253.

Dated:  October 15, 2024
New York, New York

SO ORDERED.

*Jennifer Rochon*

JENNIFER L. ROCHON
United States District Judge

---

[2] The Court does not agree with Brend's final contention that even if none of the above-discussed errors alone warrants reversal, "the cumulative effect of the errors in Mr. Brend's trial amounts to a deprivation of due process and fundamental fairness."  Brend Br. at 37.  Brend's argument conflates the "cumulative unfairness" doctrine, which applies to errors made by the trial *court*, *see United States v. Al-Moayad*, 545 F.3d 139, 178 (2d Cir. 2008), with the Second Circuit's guidance that courts should evaluate the "totality of the evidence before the judge or jury" when evaluating the effect of "errors . . . that fall outside the 'wide range of professionally competent assistance,'" *Lindstadt v. Keane*, 239 F.3d 191, 199 (2d Cir. 2001).  *See* Brend Br. at 37.  Cumulative error by the trial court implicates due process, *see Al-Moayad*, 545 F.3d at 178, while the weight of cumulative errors by trial counsel implicates a defendant's Sixth Amendment right to effective assistance of counsel, *see Strickland*, 466 U.S. at 687-88.  For the reasons stated previously, the issues raised by Brend do not individually nor collectively show that the performance of Brend's counsel fell below an objective standard of reasonableness under prevailing professional norms.  Moreover, Brend cannot show prejudice, given the overwhelming amount of evidence presented at trial that supported a guilty verdict.