UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>- v. -<br><br>DAVID BREND,<br><br>                              Defendant. | Case No. 1:22-cr-00551 (JLR)<br><br>**MEMORANDUM OPINION** |

JENNIFER L. ROCHON, United States District Judge:

    Following a jury trial, Defendant David Brend was convicted of conspiracy to commit wire fraud in violation of 18 U.S.C. § 1349. *See* Dkt. 332 ("Judgment") at 1; Dkts. 173, 175, 177, 179, 181, 183, 185, 187 ("Trial Tr."). He was subsequently sentenced to a term of imprisonment of 120 months, to be followed by a term of supervised release of 3 years. Judgment at 2-3. At the sentencing hearing, the Court ordered a forfeiture money judgment, and deferred determination of the final amount. *Id.* at 7; *see* Dkt. 353 ("Sentencing Tr.") at 58:20-25, 88:17-89:5. Now before the Court is the Government's Proposed Order of Forfeiture, *see* Dkt. 330-1 ("Proposed Order of Forfeiture"), and Brend's objections thereto, *see* Dkt. 342 ("Obj."). The Government seeks an order of forfeiture in the amount of $195,305. Dkt. 330 at 1.

    For the reasons set forth below, Brend's objections lack merit. The Government's Proposed Order of Forfeiture is adopted by separate order.

## BACKGROUND

    Brend, along with five co-defendants, was charged with conspiracy to commit wire fraud in violation of 18 U.S.C. § 1349. *See* Dkt. 2. The charge arose from Brend's involvement in IcomTech, a company that claimed to be engaged in the business of trading and mining cryptocurrency, but that instead operated a multi-level-marketing ("MLM") Ponzi

scheme. Victims purchased investment products using cash, checks, and wire transfers. Beginning at least in January 2019, if not earlier, Brend worked as a promoter for the IcomTech scheme, recruiting victim-investors to give money to IcomTech, appearing in recruitment videos, and directing investors in his "downline" to send payments directly to his company, True Credit Repair LLC ("True Credit Repair"). *See* Trial Tr. 502:2-505:16, 960:21-63:1, 1124:2-16; Dkt. 319-1 ¶ 8. Brend also deterred investors from discovering the fraudulent scheme or going to the authorities. *See* Trial Tr. 1113:6-1114:25, 1116:4-8, 1146:6-1150:16. Brend was involved with IcomTech through at least the end of August 2019. Dkt. 319-1 ¶ 20; GX 326.

## DISCUSSION

The Government requests that an order of forfeiture be entered in the amount of $195,305. Dkt. 330 at 1. This amount is based on the sum of credits (excepting interest) in True Credit Repair's bank accounts at Synovus and Bank of America between January 1, 2019, and September 1, 2019. *Id.*

Under 18 U.S.C. § 981, "[a]ny property, real or personal, which constitutes or is derived from proceeds traceable to . . . any offense constituting 'specified unlawful activity' . . . , or a conspiracy to commit such offense," including wire fraud, is subject to forfeiture. *Id.* § 981(a)(1)(C); *see id.* §§ 1956(7)(A), 1961(1). The Court's forfeiture determination "may be based on evidence already in the record, including any written plea agreement or, if the forfeiture is contested, on evidence or information presented by the parties at a hearing after the verdict or finding of guilt." *United States v. Capoccia*, 503 F.3d 103, 109 (2d Cir. 2007) (quoting Fed. R. Crim. P. 32.2(b)(1)). The government bears the burden of proving facts supporting forfeiture by a preponderance of the evidence. *United States v. Gaskin*, 364 F.3d 438, 461 (2d Cir. 2004); *accord United States v. Fishman*, No. 20-cr-00160

2

(MKV), 2023 WL 4409020, at *9 (S.D.N.Y. July 7, 2023).  Courts need not determine "the loss with precision but rather need only make a reasonable estimate of the loss, given the available information." *United States v. Treacy*, 639 F.3d 32, 48 (2d Cir. 2011) (quoting *United States v. Uddin*, 551 F.3d 176, 180 (2d Cir. 2009)).

"Because the Second Circuit has held that wire fraud is 'unlawful activity' under § 1956(c)(7), 'proceeds' are defined as 'property of any kind obtained directly or indirectly, as the result of the commission of the offense giving rise to forfeiture, and any property traceable thereto, and is not limited to the net gain or profit realized from the offense.'" *United States v. Kenner*, 443 F. Supp. 3d 354, 363 (E.D.N.Y. 2020) (citation omitted) (quoting 18 U.S.C. § 981(a)(2)(A)) (citing *United States v. Szur*, 289 F.3d 200, 213 (2002)).

Brend objects to the Proposed Order of Forfeiture on the ground that the evidence does not support a forfeiture amount of $195,305.  Obj. at 1.  Specifically, he argues that he: (1) did not use the funds deposited by victims for his own benefit; (2) was unaware of the conspiracy during the relevant time period and did not jointly agree to participate in it, making the proceeds of the conspiracy unforeseeable to him; and (3) was himself a victim of the IcomTech scheme.  *Id.* at 1-2.  The Court will discuss these arguments before considering whether the Government has established the proposed forfeiture amount by a preponderance of the evidence.

Brend first argues that forfeiture should not be ordered based on the funds that flowed into the True Credit Repair accounts because he did not use those funds for his own benefit, but instead invested those funds in IcomTech on behalf of investors.  Obj. at 1.  This argument is without merit.  The evidence adduced at trial indicates not only that the funds that flowed into the True Credit Repair account were obtained as result of Brend's participation in the IcomTech conspiracy, but also that Brend, in fact, used these funds for his own benefit.  As

3

the Court has previously explained, the evidence shows that Brend used the True Credit Repair bank accounts to pay his wife, Laryssa Brend, and take personal trips, among other things. *See United States v. Brend*, No. 22-cr-00551 (JLR), 2024 WL 4491444, at *7 (S.D.N.Y. Oct. 15, 2024) ("*Brend I*"); *see also* Trial Tr. 561:20-565:6; GX 329 (True Credit Repair's ADP payroll records for its sole employee, Laryssa Brend); GX 336 at 132-33; GX 1001 at 3 (salary to Laryssa Brend). For example, during the period from January 1, 2019, to September 1, 2019, Brend paid more than $40,000 to pay his wife a salary from the True Credit Repair Bank of America account, paid more than $5,000 toward his wife's credit card bill, and withdrew more than $15,000 in cash. *See* GX 326. Notably, Brend lacked legitimate income during this time as well. While Brend reported that he supported himself by working as an independent business consultant during the relevant time period, he did not report an estimated amount of income earned from consulting fees, nor did he corroborate his employment. Dkt. 238 ("PSR") ¶ 108. Brend's argument that the amounts should not be forfeited because he was not a part of the IcomTech conspiracy and simply forwarded monies received to IcomTech is also belied by the jury's verdict that found that he was a knowing member of the conspiracy. The Court therefore rejects Brend's first objection.

Brend's second and third related objections — that he was unaware of the conspiracy and was a victim himself — are likewise rejected. The jury has found Brend guilty of knowingly participating in the charged conspiracy and the Court has rejected Brend's post-trial motions. *See Brend I*, 2024 WL 4491444, at *4-6 (rejecting Federal Rule of Criminal Procedure 29 and 33 challenges to the sufficiency of the evidence). As a result, Brend's second and third objections are without merit.

The Court next considers whether the Government has demonstrated the proposed forfeiture amount by a preponderance of the evidence. The evidence shows that Brend

4

received funds from victims via cash, wire transfer, and check deposits into two bank accounts in the name of True Credit Repair LLC, which he controlled, at Synovus and Bank of America. Dkt. 330 at 1; *see* GX 311 (Synovus records); GX 326 (Bank of America records). At trial, the Court also heard from IcomTech victims, who testified that Brend directed them to send money to the True Credit Repair account so that he could purportedly "convert it into cryptocurrency." Trial Tr. 561:16-562:5; *see, e.g.*, *id.* at 562:16-21 (victim testifying that Brend directed an IcomTech investor to make a $10,000 check payable to True Credit Repair's Bank of America account). The Government represents that the proposed forfeiture amount "represents the sum of credits (excepting interest) between January 1, 2019 and September 1, 2019 from True Credit Repair LLC accounts at Synovus and Bank of America." Dkt. 330 at 1. All of the deposits into those accounts during the relevant time period total $199,479.02 and therefore the Government excluded some items. While the Government has not addressed the particular deposits that were omitted, the differential is likely accounted for by the rightful omission of items such as wire transfer fee refunds or monthly service charge refunds. Moreover, Brend has not objected to the Government's method for calculating forfeiture. *See generally* Obj. The Court "need not establish the loss with precision," but rather must only "make a reasonable estimate of the loss, given the available information," *Treacy*, 639 F.3d at 48 (citation omitted), and the sum proposed by the Government is supported by a preponderance of the evidence.

## CONCLUSION

For the foregoing reasons, the Court concludes that Brend's objections to the Proposed Order of Forfeiture are without merit. The Court will enter forfeiture by separate order in the amount of $195,305 in U.S. currency.

Dated: February 3, 2025
       New York, New York

                                              SO ORDERED.

*Jennifer Rochon*
JENNIFER L. ROCHON
United States District Judge